UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LYON SHIPYARD 401(k) PLAN, )
)
    Interpleader, )
)
v. ) Civil Action No. 2:18-cv-124
)
MINWER SUBEH, and )
ANGELA JONES, )
)
    Defendants. )

## OPINION & ORDER

These matters are before the Court on the parties' motions for summary judgment. Doc. 59 (June 19, 2019) ("Subeh's Motion"); Doc. 62 (July 13, 2019) ("Jones's Motion"). Defendant Jones is the widow of Lonnie Jones ("Decedent"), and Defendant Subeh is Decedent's long-time friend and beneficiary of Decedent's trust. The Court held a hearing on these motions on September 10, 2019. At that hearing, the Court ruled from the bench and **DENIED** Defendant Subeh's Motion and **GRANTED** Defendant Jones's Motion. However, the Court lacked sufficient information to decide in what form benefits should be paid to Defendant Jones; accordingly, the Court **ORDERED** supplemental briefing and **DEFERRED** ruling on that matter.

After oral arguments, Defendant Subeh moved to set this Court's order aside. For reasons discussed herein, that motion is **DENIED**.

### I. BACKGROUND

A.   **UNDISPUTED FACTS**

*i. Subeh's Motion*

Defendant Subeh alleges that (1) this case began as a state court case which Defendant Jones non-suited, (2) Defendant Jones never answered state court RFAs as to whether Decedent

1

was incapacitated, (3) this federal action followed, (4) he served Defendant Jones with federal court RFAs as to whether Decedent was mentally incapacitated, and (5) Defendant Jones has not sufficiently answered them and they are therefore admitted. Doc. 60 at 1-3. He also summarizes the legal posture of this case. Id.

Defendant Jones disputes that she is bound by any RFAs in the state court action, because that case was nonsuited. Doc. 61 at 3 (citing Temple v. March Washington Hosp., 288 Va. 134, 140 (2014)). Defendant Jones further disputes that Defendant Subeh's federal court RFAs are admitted because she timely objected to the RFAs. Id.

*ii. Jones's Motion*

Defendant Jones provides a list of three (3) undisputed facts:

1. [Defendant Jones] and [Decedent] married on April 13, 2016.
2. [Decedent], at the time of his death, held the Plan which was subject to the requirements of the federal Employees Retirement Security Act.
3. [Decedent] died on or about November 25, 2017.

Doc. 63 at 2. Defendant Subeh does not seem to dispute any of these facts; he only asserts that the marriage between Ms. Jones and Decedent was void for mental incapacity.

Although not in her list of undisputed facts, Defendant Jones also asserts that the Plan is a 401(k) plan, doc. 63 at 1; and that she has not waived her rights to the Plan funds, doc. 63 at 5. Defendant Subeh has not disputed these facts either.

*iii. Additional Facts from the Record*

Decedent began working for Lyon Shipyard on June 18, 1990, and began participating in the Plan on October 6, 1990. Doc. 1 ¶¶ 5, 6; Doc. 7 ¶ 1; Doc. 53 ¶ 1. When Decedent joined the Plan, he indicated that he was single and named his daughter and grandson as the beneficiaries

2

under the Plan. Doc. 67-3 at 28-29. On February 7, 2008, Decedent named Defendant Subeh as his power of attorney. Doc. 1 ¶ 10; Doc. 7 ¶ 3. On February 7, 2008, Decedent also formed a revocable living trust ("the Trust") and named Defendant Subeh the sole beneficiary. Doc. 1 ¶¶ 8, 9, 11; Doc. 7 ¶ 3.

On May 8, 2015, Decedent retired. Doc. 1 ¶ 12; Doc. 7 ¶ 3. On July 26, 2016, after Defendant Jones and Decedent married, Defendant Subeh executed an Installment Enrollment Form, and indicated that Decedent was single. Doc. 1 ¶ 15; Doc. 7 ¶ 3. The installment enrollment form indicated that the Plan was to begin making monthly distributions of $9,000 to an account in the name of "Minwer H. Subeh, FBO Lonnie Jones." Doc. 1 ¶ 14; Doc. 7 ¶ 3. The installment enrollment form also changed the beneficiary of the plan to the Trust. Doc. 1 ¶ 16, Doc. 1-3; Doc. 7 ¶ 3.

Many of the documents in this case have the heading, "Principal Financial Group." Principal Financial Group is the custodian of Plan assets, records, and administers Plan services. Doc. 1 ¶ 4; Doc. 7 ¶ 1; Doc. 53 ¶ 1.

B. PROCEDURAL BACKGROUND

This ERISA case began on March 6, 2018, when the Lyon Shipyard 401(k) Plan ("the Plan") filed a Complaint for Interpleader Relief. Doc. 1. Defendant Subeh answered the Complaint on March 15, 2019, Doc. 7, and admitted most of the allegations of the Complaint, but Defendant Subeh denied that Defendant Jones was ever married to Decedent. Whether Defendant Jones and Decedent were ever legally married was the subject of ongoing state court litigation. Doc. 12 at 2.

On March 26, 2018, Defendant Subeh moved to continue this litigation pending the state court litigation. Doc. 11. On March 27, 2018, the Plan filed a motion for interpleader relief. Doc.

15. On June 1, 2018, Defendant Subeh requested that default be entered against Defendant Jones and moved for default judgment, as she did not answer the Complaint. Doc. 20. On June 1, the clerk entered default against Defendant Jones. Defendant Jones was allegedly served through her former attorney, who did not represent her at that time. Doc. 25 at 5. On June 12, 2018, this Court held a hearing on Defendant Subeh's motion to continue, the Plan's motion for interpleader relief, and whether default judgment should be entered against Defendant Jones. The Court denied the motion to continue as moot, because the state court litigation had been non-suited. Id. at 5. The Court determined that Defendant Jones was improperly served with process; therefore, the Court denied the motion for default judgment and held the motion for interpleader relief in abeyance pending Defendant Jones's answer. Id. at 5-6.

On July 9, 2018, an affidavit of service was filed, affirming that Defendant Jones was personally served on June 22, 2018. Doc. 28. Defendant Jones did not answer the Complaint, but she did submit a letter requesting counsel on July 24, 2018. Id. Defendant Subeh moved for summary judgment on July 31, 2018. Doc. 34. The clerk again entered default against Defendant Jones on July 31, 2018, as well.

On December 19, 2018, this Court held a hearing to consider Defendant Subeh's motion for summary judgment, whether it should enter default judgment against Defendant Jones, and the Plan's pending motion for interpleader relief. The Court granted the motion for interpleader relief from the bench. See doc. 51. The Court ordered that Defendant Jones appear no later than January 17, 2019, and show cause why default judgment should not be entered against her. Doc. 42.

On January 17, 2019, this Court held a show cause hearing at which Defendant Jones appeared pro se. Given the evidence presented, the Court determined that it would hold the pending matters in abeyance until counsel appeared on behalf of Defendant Jones. On February

18, 2019, the Legal Aid Society for Eastern Virginia entered its appearance on behalf of Defendant Jones. Doc. 48. Defendant Jones filed her answer on March 25, 2019, doc. 53, after the Court extended her deadline to file responsive papers, doc. 52.

After all parties had appeared with counsel, the Court denied Defendant Jones's letter motion to appoint counsel, the motion for default judgment, and the motions for summary judgment. Doc. 51.

Defendant Subeh filed his instant motion for summary judgment on June 19, 2019, and Defendant Jones filed her motion for summary judgment on July 13, 2019.

On September 5, 2019, this Court ordered the parties to supplement the record with the relevant ERISA plan documents. On September 9, 2019, Defendant Jones complied and filed numerous documents, including the Lyon Shipyard 401(k) Plan.

## II. LEGAL STANDARD

Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–50 (1986); Terry's Floor Fashions v. Burlington Indus., 763 F.2d 604, 610 (4th Cir. 1985). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings but must instead set forth specific facts illustrating genuine issues for trial. Celotex, 477 U.S. at 322–24. Such facts must be presented in the form of exhibits and sworn affidavits. Failure to rebut the motion with such evidence will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

A mere scintilla of evidence is insufficient to withstand a motion for summary judgment. Rather, the evidence must be such that the factfinder reasonably could find for the nonmoving party. See Anderson, 477 U.S. at 252. Although the court must draw all justifiable inferences in favor of the nonmoving party, in order to successfully defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations and denials contained in his pleadings." Doyle v. Sentry Ins., 877 F. Supp. 1002, 1005 (E.D. Va. 1995) (citing Celotex, 477 U.S. at 324). The burden on the moving party in a motion for summary judgment may be discharged by showing that there is an absence of evidence in support of the nonmoving party's case. Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc., 249 F.3d 1341, 1354 (Fed. Cir. 2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

### III. DISCUSSION

#### A. SUBEH'S MOTION

Defendant Subeh argues that Defendant Jones's responses to requests for interrogatories are deficient and therefore admitted. Doc. 60 ¶¶ 15-17. Defendant Subeh asks this Court grant summary judgment in his favor given the admissions. Id. at 3. Because Defendant Subeh has failed to carry his summary judgment burden, as described herein, the Court **DENIES** the motion.

The RFAs at issue are RFAs 3 and 4, to which Defendant Jones objected. See Doc. 60-3, 61-3. RFA number 3, mailed on April 24, 2019, stated:

> Admit or deny the genuineness and authenticity of the following documents, Exhibits #2(a) through (e) - RFA:
> a. Dr. Alison Lex letter dated November 18, 2015
> b. Dr. Alison Lex letter dated February 12, 2016
> c. EVMS Glennan Center report as of June 3, 2016

Doc. 61-3 at 3. On May 8, 2019, Defendant Jones filed initial responses in which she objected and indicated that she cannot seek the health records because she is not the administrator of Decedent's estate and that she will forthwith subpoena the documents. Doc. 61-4.

RFA number 4, also mailed on April 24, 2019, states:

> Admit or deny that Lonnie E. Jones from the alleged date of marriage, April 13, 2016 to the date of death did not own, control or acquire any marital property.

Doc. 61-3 at 3. Defendant Jones objected on May 8, 2019, arguing that RFA number 4 requested a legal conclusion to which she is not obligated to respond. Doc. 61-4 at 8.

A party receiving an RFA may (1) admit, (2) deny, or (3) object to the subject matter of the RFA within thirty (30) days of service. Fed. R. Civ. P. 36(a)(3), (4), (5). A matter is admitted if a response – including an objection – is not served within thirty (30) days of service, unless the court extends or shortens the length of time for a response. Id. at R. 36(a)(3). If the inquiring party is dissatisfied with the response or objection to an RFA, its remedy is to file a motion with the court asking the court to determine the sufficiency of the response or objection. Id. at R.36(a)(6). Accordingly, Defendant Jones sufficiently responded to the RFAs by objecting. Defendant Subeh never moved to determine the sufficiency of the RFAs; thus, the RFAs are not deemed admitted and there is no basis to grant Subeh's motion.

Even assuming the Court deemed Defendant Jones to have admitted the RFAs at issue, they would not be sufficient to support a motion for summary judgment. Taking the RFAs at issue as admitted, they would only establish that Decedent was mentally incapacitated in 2015, before Decedent married Defendant Jones.

Under Virginia law, a marriage to which a party is not capable of consenting due to then-existing mental incapacity is voidable, not void. Va. Code § 20-45.1(B) (June 30, 2016).[1] Because

---

[1] The Virginia Legislature has since amended Virginia Code § 20-45.1 in a manner which does not affect this case.

Defendant Subeh has not produced evidence to show that there was an annulment or divorce, granting summary judgment to Defendant Subeh on the validity of the marriage is inappropriate. Accordingly, the Court **DENIES** Defendant Subeh's motion for summary judgment.

**B.     JONES'S MOTION**

*i. Validity of the Marriage*

Defendant Jones argues that her marriage to decedent was valid and that she is therefore entitled to the ERISA Plan funds. Doc. 63 at 2, 5. As support, she cites a copy of the Virginia marriage register showing the marriage license and certificate between Defendant Jones (at the time, Angela Murphy) and Decedent.[2] Doc. 63, Ex. A. According to the document, the marriage took place on April 13, 2016, in Norfolk, Virginia. Id. She further argues that the marriage lasted at least one (1) year, because Decedent passed on November 25, 2017. Doc. 63, Ex. B. Defendant Jones argues that, even assuming Decedent was mentally handicapped, the marriage was voidable, not void, and that it cannot be collaterally attacked after the death of one of the parties. Doc. 63, Doc. 65. Accordingly, Defendant Jones argues that her marriage to Decedent was valid and that she is entitled to the Plan funds.

In response, Defendant Subeh only argues that the marriage between Defendant Jones and Decedent was void. Doc. 64 at 2. He argues, without citation, that Decedent was a "mentally crippled man who had no capacity to function and make judgments." Id. He argues that the marriage is therefore void and may be collaterally attacked in this case after the death of one of the parties to the marriage. Id.

---

[2] Defendant Subeh has not objected to the admissibility of any documents in the record. More broadly, Defendant Subeh has not contested that a marriage occurred. Rather, Defendant Subeh takes the position that the marriage is void.

Under Virginia law, a marriage to which a party is mentally handicapped is <u>voidable</u>, not void <u>ab</u> <u>initio</u>. Va. Code. § 20-45.1(B) (predecessor version expiring on June 30, 2016) ("All marriages solemnized when either of the parties lacked capacity to consent to the marriage at the time the marriage was solemnized, because of mental incapacity or infirmity, shall be <u>void from the time they shall be so declared by a decree of divorce or nullity</u>.") (emphasis added); <u>accord</u> FAMILY LAW: THEORY, PRACTICE, AND FORMS – VIRGINIA PRACTICE SERIES § 2:9 <u>Mental and Physical Incompetence</u> ("Under the common law, marriage to a mental incompetent was held to be void ab initio. However, a majority of states, including Virginia, now treat marriage to a mental incompetent as a voidable marriage."); <u>see</u> <u>also</u> Va. Code § 20-38.1 (reciting the marriages that are void <u>ab</u> <u>initio</u>, and omitting mental incapacity).

"[T]here is a distinction between a void marriage and a voidable marriage." <u>Marblex Design Inern., Inc. v. Stevens</u>, 678 S.E.2d 276, 279 (Ct. App. Va. 2009) (emphasis added). "A void marriage confers no legal rights, and, when it is determined that the marriage is void, it is as if no marriage had ever been performed. . . . A voidable marriage differs from a void marriage in that it may be afterwards ratified by the parties . . . and usually is treated as a valid marriage until it is decreed void." <u>Toler v. Oakwood Smokeless Coal Corp.</u>, 4 S.E.2d 364, 368 (Va. 1939).

A voidable marriage, unlike a void marriage, is valid until declared invalid and may only be attacked on a direct challenge; in other words, a voidable marriage cannot be attacked in a collateral proceeding after the death of one of the parties. <u>Alexander v. Kuykendall</u>, 63 S.E.2d 746, 749-50 (Va. 1951) ("A void marriage is a mere nullity and its validity may be impeached in any court, whether the question arises directly or indirectly, and whether the parties be living or dead. <u>This is not true of a voidable marriage</u>.") (emphasis added); <u>Howe v. Howe</u>, 18 S.E.2d 294, 397 (Va. 1942) ("A voidable marriage is valid for all civil purposes until annulled by a competent

9

tribunal in a direct proceeding, but a void marriage is a nullity and may be impeached at any time.") (emphasis added), FAMILY LAW: THEORY, PRACTICE, AND FORMS – VIRGINIA PRACTICE SERIES § 2:4 Void vs. Voidable Marriages ("A voidable marriage, on the other hand [from a void marriage], is valid for all civil purposes unless it is annulled in a direct legal proceeding by either the husband or the wife. The marital defect in a voidable marriage may therefore be ratified by the parties, and when one of the spouses dies, an annulment action cannot be brought by the other spouse."). As the Virginia Court of Appeals held in a case considering a "sham" marriage, "the marriage here considered was voidable, not void ab initio. Since that marriage was never voided, it is valid." Marblex, 678 S.E. 2d at 280.

At the hearing on these motions, counsel for Defendant Subeh and counsel for Defendant Jones disagreed on the correct interpretation of Cornwall v. Cornwall, 168 S.E.2d 439 (Va. 1933). That case concerned the administration of an estate and the legitimacy of a child of a contested marriage. When addressing the marriage at issue, the Supreme Court of Appeals of Virginia indicated,

> Code, section 5088, provides, among other things, that all marriages 'solemnized when either of the parties was insane' shall be void from the time they shall be so declared by a decree of divorce or nullity. Therefore, if it be conceded that John H. Cornwall was insane when the marriage was contracted, it would be voidable and not void. Going a step further, no decree declaring the marriage void having been entered, it remains valid.

168 S.E.2d 439, 442 (Va. 1933). The court then considered an alternative scenario that "even if the marriage here was null in law" the child would still be deemed legitimate. Id. Accordingly, this Court is of the opinion that the Cornwall case supports the conclusion that a marriage is merely voidable when one party is unable to consent due to mental infirmity, and, absent an annulment or divorce, such marriage "remains valid." Id.

Therefore, the Court **FINDS** as a matter of law that the marriage between Decedent and Defendant Jones was valid. Defendant Subeh does not dispute that a marriage took place on April

10

13, 2016; indeed, he seems to concede that a marriage occurred but takes issue with its validity. Taking the evidence in the record in the light most favorable to Defendant Subeh, Decedent was mentally incapacitated in 2015, and at the time of his marriage to Defendant Jones. See RFA's Doc. 61, Ex. 3, at 9, 11, 13 (documents stating that Decedent was mentally incapacitated roughly a year before the marriage). However, a marriage to which one party could not consent due to mental infirmity is voidable, and voidable marriage is valid until annulled in a direct proceeding. Here, in a suit for ERISA benefits after the death of Decedent, Defendant Subeh attempts to impeach the marriage at issue. He may not do so. Accordingly, the Court **FINDS** that the marriage between Decedent and Defendant Jones was valid at the time of Decedent's death.

The authorities on which Defendant Subeh relies are distinguishable. First, he cites Toler v. Oakwood Smokeless Coal Corp., 4 S.E.2d 364 (Va. 1939). Doc. 64 at 1. In Toler, the Virginia Supreme Court addressed whether to apply a public policy exception to the general conflict of laws rule that a marriage is governed by the law of the place of celebration. Toler, 4 S.E.2d at 366. The court briefly discussed the distinction between void and voidable marriages. Id. at 365-66. Although the court held that the marriage at issue in that case was void and may be attacked at any time, the Toler marriage was bigamous. Id. Unlike a marriage to which a party is mentally incapacitated, a bigamous marriage is statutorily void ab initio. Va. Code § 20-38.1(a)(1).

Defendant Subeh also relies on Alexander v. Kuykendall, 63 S.E.2d 746 (Va. 1951). Doc. 64 at 2. In that case, the court held that a party who is tricked into a fraudulent marriage may recover damages for fraud and deceit. 63 S.E.2d 746, 748. The court's opinion went on to say: "A void marriage is a mere nullity and its validity may be impeached in any court, whether the question arises directly or indirectly, and whether the parties be living or dead. This is not true of a voidable marriage." Id. at 748-50. Accordingly, the Alexander case does not hold that a voidable

marriage, such as the one here, may be attacked collaterally after death. To the contrary, it states that such a rule is "not true of a voidable marriage." Id.

Defendant Subeh also cites 55 C.J.S. Marriage § 43. Doc. 64 at 2. He cites a portion which explains that a collateral attack against a void marriage is permitted. Id. However, in the following paragraph, that source states, "On the other hand, if the marriage is merely voidable, it may be set aside only in a direct and appropriate proceeding during the joint lives of the contracting parties, and it may not be attacked in a collateral proceeding." 55 C.J.S. Marriage § 43. Thus, none of the authorities cited by Defendant Subeh assist his argument; indeed, many of them confirm that Defendant Jones is correct.

Although Defendant Subeh submits that to hold Defendant Jones's marriage to Decedent as valid would be unfair, that is the result compelled by Virginia law. Accordingly, the Court **GRANTS** Defendant Jones's motion for summary judgment.

*ii. Motion to Set Aside*

Defendant Subeh moves the Court to set its grant of summary judgment to Defendant Jones aside. Doc. 86. Defendant Subeh argues that this Court improperly relied on the most recent version of section 20-45.1 of the Virginia Code.

Federal Rule of Civil Procedure 60(b) provides that a Court may allow relief from an Order for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Here, Defendant Subeh argues that the Court applied the wrong law, which justifies granting him relief.

In 2016, the General Assembly of Virginia amended section 20-45.1 of the Virginia Code to include sub-section C, which addresses the validity of marriages involving unemancipated minors. Those amendments became effective on July 1, 2016; accordingly, the amended section 20-45.1 was not in effect at the time of the marriage at issue in this case. However, the Court relied on the predecessor statute in effect at the time of the marriage at issue in this case.[3] Indeed, the 2016 amendments did not affect section 20-45.1(B), the sub-section which governs the disposition of this case. Accordingly, there is no basis to set the Court's order aside. Defendant Subeh's motion is therefore **DENIED**.

### iii. Entitlement to Plan Funds

The remaining issue – what happens to the Plan Funds – is not fully briefed. Defendant Jones provides a brief analysis in which she claims that because Defendant Jones and Decedent were married for more than one (1) year and Defendant Jones has not waived her right to the funds, she is entitled to the funds. She calls this Court's attention to 29 U.S.C. § 1055, which requires certain plans to provide a qualified joint and survivor annuity to the participant's surviving spouse.

Defendant Subeh does not brief the issue at all. Notably, Defendant Subeh does not dispute the proposition that Defendant Jones is entitled to the Plan funds, if she was validly married to Decedent.

"The award of benefits under an ERISA plan is determined in the first instance by the language of the plan itself." S.S. Trade Ass'n Int'l Longshoreman Ass'n v. Bowman, 247 F.3d

---

[3] At oral arguments on this matter, the Court reviewed both the current and predecessor statute related to section 20-45.1 of the Virginia code and noted that both were identical insofar as they related to this case.

181, 183 (4th Cir. 2001). Following the terms of a plan document is a "core principle" of ERISA law. Boyd v. Metro. Life Ins. Co., 636 F.3d 138, 140 (4th Cir. 2011). In addition to the plan document rule, ERISA itself provides strong protections to a surviving spouse of a plan participant. Hagwood v. Newton, 282 F.3d 285, 290 (4th Cir. 2002) ("The spousal rights conferred by § 1055(a) were intended to ensure a stream of income to the surviving spouses . . . and the formalities required in § 1055(c) are included to protect against the risks of a spouse's unwitting waiver of those rights.").

The Plan document provides:

> You may need your spouse's written consent to choose someone other than your spouse as your beneficiary. If you marry after naming a beneficiary who is not the person you marry, the beneficiary you had named will no longer be your beneficiary after you have been married for a full year, unless your current spouse's written consent is obtained . . . .

Lyon Shipyard 401(k) Plan at 22. The Plan goes on to say, "Federal law may require you to have your spouse's consent to any form of benefit that does not pay a monthly income to you for life with 50% of your monthly income paid to your spouse after death." Id. at 24. Therefore, the Plan documents indicate that Decedent's spouse of at least one year is the appropriate beneficiary, regardless of any beneficiary election, unless Decedent's spouse consents to an alternate beneficiary election.

Although Defendant named his daughter, and later Defendant Subeh, as his plan beneficiaries, each beneficiary form which Decedent signed – either himself or through his power of attorney – indicates that if Decedent were to marry, his designation of any beneficiary other than his spouse is void after one year of marriage. Doc. 1-3 at 4; Decedent's October 6, 2010, Beneficiary Form at 1. Accordingly, Decedent's non-spouse beneficiary designations are void under the plain terms of the beneficiary forms.

Furthermore, section 1055 requires that every defined benefits plan or individual account plan[4] must provide for an annuity, payable to the participant's surviving spouse, unless the spouse consents to another beneficiary. 29 U.S.C. § 1055(a). Indeed,

> Congress' concern for surviving spouses is also evident from the expansive coverage of § 1055, as amended by [the Retirement Equity Act of 1984]. Section 1055's requirements, as a general matter, apply to all "individual account plans" and "defined benefit plans." § 1055(b)(1). The terms are defined, for § 1055 purposes, so that all pension plans fall within those two categories . . . While some individual account plans escape § 1055's surviving spouse annuity requirements under certain conditions, Congress still protects the interests of the surviving spouse by requiring those plans to pay the spouse the nonforfeitable accrued benefits, reduced by certain security interests, in a lump-sum payment.

Boggs v. Boggs, 520 U.S. 833, 843 (1997).

Accordingly, the Court **FINDS** that as the surviving spouse of Decedent, Defendant Jones is entitled to receive his Plan funds. However, the Court lacks sufficient evidence to determine in what form the funds should be paid.[5] Accordingly, the Court **DEFERS** ruling on the form of the payment to Defendant Jones.

The Clerk is **REQUESTED** to deliver a copy of this Opinion and Order to counsel of record.

It is **SO ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 10, 2020

---

[4] "Individual account plan" has the same definition as a "defined contribution plan," such as a 401(k) retirement plan. 29 U.S.C. § 1002(34).
[5] The parties have submitted briefing on this matter. This matter, along with whether attorney's fees should be awarded, are still under consideration.

15